## John Worth *vs.* Esther Curtis & *als.*

The contract of a guardian to sell the real estate of his minor ward, although in writing, made when he has no authority to make the sale, is illegal and void.

If the guardian of a minor, owning an undivided share of real estate, and the owners of the remaining interest therein, promise in writing to convey the same at a stipulated time, " if the guardian can lawfully sell and convey the premises belonging to his ward;" the contract is not binding upon either of the promisors, if the guardian have no power to convey within the time fixed by the parties.

This action was brought to recover damages for the non-performance of the following written agreement, not under seal. " The condition of this obligation is such, that whereas the said *Esther Curtis, Mehitabel Curtis, Eliza Curtis* and *Tobias Walker,* as guardian of *Jane S. Curtis,* (if he can lawfully sell and convey the hereafter described premises, belonging to his said ward,) have agreed to sell and convey to *John Worth,* a certain farm in *Kennebunkport,* which was the homestead farm of *Jacob Curtis,* deceased," particularly described. " And I the said *John Worth* in consideration thereof have agreed to pay the said *Esther Curtis,* the sum of $3,500, to be paid when he shall have a good and lawful deed of the same, which deed we agree to give within fourteen days. Received five dollars in part.

" *Kennebunkport, March* 23, 1836,

" *Esther Curtis,*
" *Mehitabel Curtis,*
" *Eliza Curtis,*
" *Tobias Walker, guardian to J. S. C.*"

A Probate Court for the county, was holden on the fourth day of *April,* 1836, and *Walker* made no application for license to sell the real estate of his ward, but did apply for and obtain a license to sell in *September* following, and the farm was actually sold soon afterwards at auction for $4,243. The plaintiff proved by one witness, that he and the witness went to the house of *Esther Curtis,* who was the widow of *Jacob Curtis,* a few days before the expiration of the fourteen days mentioned in the agreement, where *Worth* told her, that he was ready to comply with the agreement,

and she refused to give any deed, saying *Mr. Walker* could not convey. The witness had offered *Worth* $250 for his bargain, and would have taken the farm could he have had a deed. He had no money with him at the time, but would have had the whole of it within the fourteen days, if he could have had a deed. He did not know, that *Worth* had any money there. Another witness testified, that *Mrs. Curtis* told the plaintiff, that she should not comply with the agreement; that *Walker* could not convey, and that she should not have the interest of the money as she did the use of the farm; and that *Walker* refused to comply with the agreement, and said that, "his bondsman objected to his selling, and that he had no power to sell." This was before the expiration of the fourteen days. There was no proof that any money was offered. At the trial before the *Chief Justice,* a nonsuit was entered by consent, which was to be set aside, if in the opinion of the Court the action could be maintained against the defendants, or any of them.

*A. G. Goodwin,* for the plaintiff, argued:—

1. *Walker* is personally liable on this contract. *Forster v. Fuller,* 6 *Mass. R.* 58. All the defendants are therefore bound by it.

2. An agreement to sell binds the party to execute a proper deed of conveyance. *Smith v. Haynes,* 9 *Greenl.* 128.

3. The plaintiff has done in this case, all that was incumbent on him to perform. Where there are mutual and dependent covenants, if one party be prevented from performing his covenants by the neglect or fault of the other party, it is equivalent to a performance by the former. *Couch v. Ingersol,* 2 *Pick.* 292. On the refusal to convey, the plaintiff was under no necessity to make a tender of the money. *Howland v. Leach,* 11 *Pick.* 151; *Nourse v. Snow,* 6 *Greenl.* 208; *Smith v. Jones,* 3 *Fairf.* 332. If a purchaser has paid any part of the purchase money, and the seller refuses to complete the contract, the purchaser may affirm the contract, and bring an action for damages. 2 *Phillip's Ev.* 65; 8 *Johns. R.* 257.

4. The defendants, by selling to others, have disabled themselves to perform. *Newcomb v. Brackett,* 16 *Mass. R.* 161; *Clark v. Moody,* 17 *Mass. R.* 149.

5. *Walker* has no legal excuse for the non-performance of his contract, or at least such part of it as was within his power to perform. 3 *Com. Dig.*, *Condition*, *G.* 10 ; 1 *Wheat. Selw.* 339.

*D. Goodenow* and *Bourne*, for the defendants, contended, that by a fair construction of the contract, there was not to be a conveyance of any part of the estate, if *Walker* had not power to convey the interest of his ward. It was impossible to obtain a license and sell this share within the fourteen days. This was a joint contract, and there was to be a joint conveyance, if any. If *Walker* therefore was discharged, all were discharged. The contract, as it is called, is *nudum pactum*, only one party, if either, being bound, as the plaintiff did not sign the paper. But it is a sufficient answer to the action, that the plaintiff made no tender of payment, or offer of any money, at any time. Unless this was done within the fourteen days, the contract was at an end, and they might afterwards do as they pleased with the land. 18 *Johns. R.* 459 ; 3 *Salk.* 75 ; *Bean* v. *Parker*, 17 *Mass. R.* 591 ; 4 *Munf.* 63 ; *Whitefield* v. *Longfellow*, 13 *Maine R.* 146 ; *Wood* v. *Washburn*, 2 *Pick.* 24 ; *Powell on Con.* 160, 179 ; 3 *Johns. Ch. R.* 409 ; 8 *T. R.* 89 ; 1 *Dane*, 656 ; 9 *Dane*, 10 ; 3 *Johns. Ch. R.* 29 ; 6 *Johns. R.* 194 ; 2 *B. & Cr.* 661 ; 3 *T. R.* 653 ; 12 *Johns. R.* 190 ; 1 *Caines'*, 583 ; 2 *Hals.* 145 ; 6 *Johns. R.* 94 ; *Bank of Columbia* v. *Hagner*, 1 *Peters*, 455 ; *Eaton* v. *Emerson*, 14 *Maine R.* 335 ; *Smith* v. *Moore*, 6 *Greenl.* 274 ; 2 *Johns. R.* 193 ; 3 *Cranch*, 242 ; 4 *Dallas*, 269.

The case was continued for advisement, and the opinion of the Court was afterwards drawn up by

EMERY J. — The plaintiff contends, that as *Esther Curtis* had a life estate in the property about which the question arises, all the defendants having signed the contract, the action may be sustained against all or one of them. That having agreed to sell, the defendants are bound to give a proper deed. That, as *Worth* told *Mrs. Curtis* he was ready to perform, and she and *Mr. Walker* refused, he has a right to sustain his action. For he insists, that the contract was a valid one ; that he had paid five dollars in part ; that the refusal excused him from making a tender of the money, and that if *Walker* had not a license, he should have shown it.

Afterwards he obtained one, and the parties have since disabled themselves from performing their agreement, by selling to another, and ought to respond in damages.

In regard to contracts in relation to things which are not physically impossible, but the impossibility of which arises from circumstances peculiar to the party contracting, as if a man contract to sell an estate the title to which is in another person ; though equity will not enforce a specific execution, that will not discharge the person contracting to sell, from paying damages to the party, for any loss he may sustain, by reason of his being imposed upon or disappointed ; but will not bind him to any damages as a compensation for the non-performance of the thing contracted for itself, that, as being impracticable to the party, not requiring any. And though a contract be a foolish one, yet it will hold in law, and the person so contracting, it is said, ought to pay something for his folly. As where one in consideration of 2*s.* 6*d.* paid, and of £4, 17*s.* 6*d.* to be paid to him upon his performance of the agreement, contracted to deliver to B. two grains of rye corn on the *Monday* following, and so on progressively doubling the quantity on every *Monday*, during the year ; it was objected, that it was impossible on its face, as it would amount to such a quantity as all the rye in the world was not sufficient to produce. Certainly the result could not be determined without a process of careful arithmetical calculation. But the law was against the improvident contractor, and the cause was compromised, on repayment of the half crown and costs. *Powell on Contracts,* 161, 162, 163.

If the contract be such as the plaintiff contends, it would seem that " neither party intended to trust to the personal security of the other, and that neither party was obliged to perform his part of the agreement, unless the other party was ready and willing at the same time to perform his part also." *Howland* v. *Leach & al.* 11 *Pick.* 155.

The defendant's counsel have urged upon our notice, that the contract on which the suit is founded was not signed by *Worth,* that he does not bind himself to take the property, though the paper must have been written with the expectation that he was to sign, unless he was willing to let the subject lay at loose ends, till *Mr. Walker* could ascertain whether he lawfully could convey his

ward's property. And this would seem to be that construction, which would place the parties on the most honorable ground. On examination, it may prove to be not very variant from the legal ground.

The first step for the plaintiff, for the purpose of fixing blame upon *Walker*, would be, one would imagine, to show that at the time of the contract he was duly licensed to sell and convey the property at private sale.

But according to the plaintiff's own proof in the case he goes on to extract and exhibit evidence from *Walker's* mouth, calculated, not to impeach his willingness, under different circumstances to perform, *but to justify his refusal to comply* with the agreement, as his bondsman objected to his selling ; *and that he had no power to sell.* Though the first reason, without the last, might be insufficient. Yet in establishing the last, *the plaintiff proves a complete justification of the defendants, by the terms of the contract, in proving that Walker had no power to sell.*

The parties were dealing for the whole farm of about 100 acres, in which *Esther Curtis* had rights, and the heirs of her husband had rights. But there is no allusion to the separate rights of either *Esther, Mehitabel, Eliza,* or *Jane,* the infant, as to extent and distinct value of either, in the contract. They made the whole dependent on the fact of *Walker's* lawful ability to convey. The widow's reason for refusal, in presence of *Mr. Bradbury,* was, that *Walker could not convey. Mr. Simpson* " heard her give *Mr. Worth* to understand, that she should not comply with their agreement, and she said, he must not hold on to the contract too hard, *that Walker could not convey,* and she did not wish to, as she could not have the interest of the money, as she did the use of the farm." The first reason she assigned was sufficient for her protection ; and we are not to turn against her the simple, honest confession of her disinclination to lose the use of the farm, out of which she was to support some of the children, unless by law, we are compelled to do so.

In the case cited by the plaintiff, *Forster* v. *Fuller,* 6 *Mass. R.* 58, *Parsons C. J.* says, " as an administrator cannot by his promise bind the estate of the intestate, so neither can the guardian by his contract bind the person or estate of his ward."

The construction to be put upon this contract, as it appears to us, is, that no portion of the agreement was to go into operation unless *Tobias Walker,* the guardian of *Jane S. Curtis,* can lawfully, within the 14 days, convey the part of the premises belonging to his said ward.   And we are satisfied, that a guardian so situated cannot be holden, on principles of public policy, by such an agreement, more than an executor or administrator could.

There is full danger enough of sacrificing the interest of minors, with all the guards which the law can throw about them.

Such a contract by an administrator, before a license obtained for that purpose, is void.   It could not be enforced at law nor in equity.   It is calculated to repress all fair competition for obtaining the best price for the infant's property.   *Bridgewater* v. *Brookfield,* 3 *Cowen,* 299.

*The nonsuit is confirmed.*